Elmer Norman RAMISKEY, Appellant,

v.

CITY OF KETCHIKAN, Appellee.

No. 5103.

Court of Appeals of Alaska.

Sept. 10, 1981.

James L. Bruce and Richard Yospin, Asst. Public Defenders, Ketchikan, and Brian Shortell, Public Defender, Anchorage, for appellant.

Richard M. Treiser, Asst. Municipal Atty., and Russell W. Walker, Municipal Atty., Ketchikan, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Elmer Ramiskey was convicted in a jury trial of disorderly conduct, in violation of Ketchikan Municipal Code § 9.04.010(a)(1), for "repeatedly and continuously shouting and screaming in a loud voice in a public place."[1] He appealed to the superior court, which ultimately affirmed his conviction. He now appeals to this court, raising sever-

---

1. KMC § 9.04.010(a)(1) reads:

   *9.04.010 Certain acts declared misdemeanors*

   (a) A person who does any of the following is guilty of a misdemeanor:

   (1) In a public place repeatedly or continuously shouts, blows a horn, plays a musical or recording or amplifying instrument, or otherwise generates loud noises intending to disturb or acting with reckless disregard for the peace and privacy of others;

   . . . .

al issues involving the constitutionality of KMC § 9.04.010 and the instructions which were used to charge the jury at his trial. We have examined the issues raised and have decided that we must reverse Ramiskey's conviction.

On April 16, 1979, Ramiskey went to the Rainbird Bar in Ketchikan, Alaska. He met a young woman outside the bar and invited her in for a drink. Ramiskey left the young woman at a table and, after going to the restroom, purchased two drinks. However, Eloise Early, a cocktail waitress who was working in the bar, discovered that Ramiskey's companion did not have identification showing that she was of legal age to drink. Early requested that the young woman leave the bar, which she did. Early next asked Ramiskey for identification. He did not have any, even though it is undisputed that he was nineteen at the time. Early informed him that he would have to leave, which he refused to do. When Early threatened to call the police, Ramiskey told her to go ahead and call them and indicated that they would verify his age.

Someone then called the police, and officers Thomas Sylsberry and James Jencks arrived at the Rainbird. Jencks told Early that Ramiskey was indeed 19. Nevertheless, Ramiskey remained upset, apparently because he felt that he had paid for a drink and was not allowed to drink it. He was very loud and threatened to do bodily injury to Early. Officer Jencks repeatedly tried to get Ramiskey to calm down, but Ramiskey remained outraged at Early. In response to Jencks's question of whether she wanted Ramiskey out of the bar, Early said, "Yes." Officer Jencks asked Ramiskey to leave the bar. Ramiskey left the bar voluntarily, although he continued to yell and scream as he left. Officer Jencks started out the door with Ramiskey, and Officer

Sylsberry followed them out onto the sidewalk.

Ramiskey continued to yell in front of the Rainbird. He threatened to get a gun and kill Early. Officer Jencks testified that he repeatedly told Ramiskey to calm down and told Ramiskey he could make a complaint against the bar to get his money back. Ramiskey apparently called the officers "fucking pigs." According to the officers, Ramiskey continued shouting for ten minutes. Early claimed that the shouting was loud enough for her to hear back in the bar "very plainly." Ramiskey testified that he was out in the street for ten minutes, but disagreed that he was shouting the entire time. At some point the officer asked Ramiskey to calm down and leave. Ramiskey then ran down the street yelling. He was charged, according to Officer Jencks, not for making threats or calling the officers names, but for yelling loudly. Ramiskey's trial and conviction followed.

■ Ramiskey has raised a number of grounds on appeal, arguing that KMC § 9.04.010(a)(1) is unconstitutionally vague and overbroad, and that the trial jury was improperly instructed. We find it necessary to reach only Ramiskey's argument that jury instruction Number 5 omitted a necessary element of the offense with which he was charged.[2] Although Ramiskey did not object to this instruction at trial, we find that it was plain error for the trial court to omit the element of intent in instruction Number 5, the instruction which purported to set forth the elements of the offense. KMC § 9.04.010(a)(1) requires that to be convicted for making loud noises a defendant must make those loud noises with intent "to disturb or . . . with reckless disregard for the peace and privacy of others. . . ."[3] This element of the offense was omitted from instruction Number 5.

The city argues that failure to give this element in instruction Number 5 was harm-

---

2. Instruction Number 5 read as follows:

The essential elements of Disorderly Conduct are:

1. That at the time and place alleged, the defendant ELMER N. RAMISKEY did continuously and repeatedly shout in a loud voice;
2. That the place was a public place, and

3. That the defendant did disturb the peace of others around him.

3. We express no opinion on whether the language "with reckless disregard for the peace and privacy of others," without a narrowing construction, makes this ordinance vague or overbroad.

less error because KMC § 9.04.010(a)(1) was set forth in full in another instruction.[4] However, we feel that setting forth the ordinance in the instructions did not eliminate the substantial confusion which the instructions created by not listing any element of intent.

An appellant who asks us to notice an error as plain error has "the heavy burden of demonstrating that the alleged misconduct raises a substantial and important question." *Garroutte v. State*, 508 P.2d 1190, 1191 (Alaska 1973). The error complained of must also be obvious and prejudicial *Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978); *Kugzruk v. State*, 436 P.2d 962, 964 (Alaska 1968); *Bowker v. State*, 373 P.2d 500, 505 (Alaska 1962). We feel that Ramiskey has met his burden in this case. The foremost consideration in our minds is that this is a case regulating speech. "Under the First Amendment to the Constitution, it is only in the most limited circumstances that speech may be punished."[5] *Anniskette v. State*, 489 P.2d 1012, 1013 (Alaska 1971) (footnote omitted). It is therefore clear that any statute or ordinance which regulates speech can be constitutional only if it is drafted and applied in such a way that it does not interfere with first amendment freedoms. *Marks v. City of Anchorage*, 500 P.2d 644, 647 (Alaska 1972). We hold that the instructions given in this case did not offer sufficient protection to Ramiskey's right to freedom of speech and, consequently, we find plain error.

Under the facts of this case, Ramiskey could contend that he was attempting to relate to the officers his complaints about the treatment he received in the bar and that his intent was to communicate, not to disturb. The trial court's failure to list the required intent in instruction Number 5 therefore omitted a key element in Ramiskey's defense. It is doubtful that KMC § 9.04.010(a)(1) would be constitutional if the requirement of intent were omitted from the ordinance.

In addition, we note that KMC § 9.04.020 reads as follows:

> *9.04.020 Conduct not covered by this chapter.* This chapter shall not apply to peaceful picketing, public speaking, or other lawful expression of opinion not in contravention of other laws.

This section of the ordinance also is aimed at protecting first amendment values and at limiting the extent to which communicative speech could be regulated. It is certainly possible that the jury could have found, under the facts of this case, that Ramiskey's conduct was protected by this section of the ordinance. However, the trial court also did not instruct on this requirement of the ordinance. Given this failure of the trial court, coupled with its failure to instruct on the element of intent, we believe that plain error was committed and that Ramiskey's conviction must be REVERSED[6] and the case REMANDED.

---

4. Instruction Number 3 read as follows:
   The defendant is accused in the complaint of violating Ketchikan Municipal Code Section 9.04.010, the pertinent portion of which reads as follows:
   A person who does any of the following is guilty of Disorderly Conduct: In a public place repeatedly or continuously shouts or otherwise generates loud noises intending to disturb or acting with reckless disregard for the peace and privacy of others.

5. The first amendment to the United States Constitution provides in part: "Congress shall make no law ... abridging the freedom of speech ..." The parallel provision in the Alaska Constitution is in article 1, section 5: "Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right."

6. We therefore find it unnecessary to reach Ramiskey's contention that KMC § 9.04.010(a)(1) is unconstitutionally vague or overbroad. It is clear, however, that the ordinance could be upheld only if construed in a most narrow fashion. *Holton v. State*, 602 P.2d 1228 (Alaska 1979); *State v. Martin*, 532 P.2d 316 (Alaska 1975); *Poole v. State*, 524 P.2d 286 (Alaska 1974); *Marks v. City of Anchorage*, 500 P.2d. 644 (Alaska 1972); *Anniskette v. State*, 489 P.2d 1012 (Alaska 1971).